OPINION OF THE COURT — by the
How. JUDGE BLACK.
The complainant does not shew by his bill sufficient reason why the voluntary conveyance from R. Fletcher, to Glasbourne should be set aside, and be subject to his debt. The bill alledges that R; Fletcher, at the time of his death, was largely indebted for trausactions before and after the transfer, and that without the property transferred his estate will be insufficient to pay the debt.
This charge that Fletcher was indebted on account of transactions before and since the transfer, is too vague and uncertain. It might be asked what portion of these transactions was before, and what since, the trans *478 fer? To this, fhe bill gives no satisfactory answer. El etcher might have owed a very small sum at the time of executing the conveyance, and af-vvarrls became largely indebted, and then taking what he owed previously and adding it. in calculation to what he contracted subsequently, it would make a large amount. The allegation then that Fletcher was indebted on account of transactions before and since the transfer, would be boern out by the facts. Can the conjunction of indebtedness be permitted to prevail in the absence of actual fraud? If one being largely indebted, make a voluntary transfer of his property, a presumption of fraud arises, or if he make it with a view to future indebtedness , it is actual fraud— but to say that a man who owes a sum of money, inconsiderable when compared with his ability to pay shall not be permitted to give away any part of his property, howover small, would be to infringe on his rights of first importance, and to fetter property with an intolerable clog. If a person thus situated, should give away part of his property, the ti-ansfer would be good, honest and valid, at the time. His creditors could not complain, for he would answer them, I have property left sufficient by many times to pay you; that same person might afterwards be unfortunate and become involved. The subsequent creditor could not complain that their debtor bad at some former period when he owed little or nothing, given away part of his property. Yet in a bill they could use the same language used in complainants bill, by adding the subsequent debt to some inconsiderable and insignificant su m due previously to the transfer, they might say their debtor was much involved on account of transactions before and since She transfer If this was all they could urge, their complaint would not be listened to. This might be thought to be a criticism rather verbal in its charactei if it were not that it is fully justified by the subsequent allegations of complainants bill. It is true that complainant states that unless the property is made subject to the claim of creditors cf Fletcher, his estate will be insolvent. This may be true and still Fletcher may have left at his death sufficient assets to pay all his debts. It not only does not affirmatively appear that Fletcher died insolvent, hut it negatively appears by the bill itself, that he died leaving much property whicn it is stated his executors (who were exempted from giving security by the will) have wasted. That charge in the bill, is as follows:~“Your orat or *479 also states, that at the death of the said Richard Fletcher, he was possessed of a large, estate, both real and personal, which immediately thereafter W ent into the hands of his representativesYour orator states that the said executor and executrix though bound by principles of honesty and their duty as representatives of the said Richard Fletcher, deceased, did not give any account, nor return any inventory of said estate from the time of their appointment as aforesaid until the year 1826, from which return made in the year 1826 by the executor, Robert R. Fletcher it appears that said estate is insolvent.”
This being the truth Richard Fletcher not only it is to be presumed had sufficient property left to pay all his debts after making the conveyance of the property in question, but left at his death a large real and personal property which his executors have wasted. The only complaint there is against the executors, who have wasted the estate coming to their hands, and for this the complainant has his full remedy against them. The fact of their not having been required by the will to give security,- will not make any diffrence. Complainant might have appeared before the orphans court, and on a proper shewing compelled them to do so, notwithstanding the will. The executors alone are to blame for want of sufficient assets and it would appear singular indeed to say that the validity of the transfer should be made to depend not on the fact of fraud, real or implied, nor on the indebtedness or solvency of Fletcher at the time of making the transfer, but on the prudent or imprudent management of his executors since his death. For these reasons it appears, as was before remarked, if complainant has any just cause of complaint, it is against the executors of R. Fletcher, and he cannot make his property liable for his claim. This view is decisive of the case, but it may be well to notice the two points raised and discussed at the bar. It was contended that the complainant filed his bill prematurely, not having first obtained a judgment and that he cannot help his case by filing a supplemental bill, stating that he obtained judgment since.
It is true, in general, that a creditor cannot file such a bill as this to set aside a conveyance until he has obtained a judgment at law; for until then, he has no lien but to this rule there may be exceptions where the aid of a Court of Chancery is necessary to make the legal right of the *480 party available to him. In this case, Richards had an execution against Glasbourne, and was about to sell this property. If he had been permitted to do so, the property would have passed into the hands of purchasers, for valuable consideration, who would, without notice, have held the property discharged of complainant’s demand. It was, therefore, proper to stay Richard’s execution until the rights of the parties could be fairly investigated, and the bill was properly filed in the nature of one quia timet, and complainant subsequently obtaining judgment was sufficient: nor can Richards be considered with any degree of propriety as standing in the light of purchaser for valuable consideration. He did not credit Glasbourne on the faith of his having this property. One Poultney was his original debtor against whom he sued out an attachment, and got judgment against Glasbourne as garnishee. There are many points of difference between the ground upon which Richards stands, and that upon which a bona fide purchaser for valuable consideration would present himself before the court.